# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| DAVID SWETT, | : | Case No. 3:11-cv-38 |
| Plaintiff, | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Michael J. Newman |
| vs. | : | |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY | : | |
| | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THE CASE BE CLOSED

This is a Social Security appeal brought pursuant to 42 U.S.C. § 405(g). At issue is whether the Administrative Law Judge ("ALJ") erred in finding that Plaintiff David Swett ("Plaintiff") was "not disabled" and therefore unentitled to Disability Insurance Benefits ("DIB"). *See* Administrative Transcript ("Tr.") 630.

This case is before the Court upon Plaintiff's Statement of Errors (doc. 11), the Commissioner's Memorandum in Opposition (doc. 15), Plaintiff's Reply (doc. 16), the administrative record, and the record as a whole.

---

[1] Attached hereto is NOTICE to the parties regarding objections to this Report and Recommendation.

# I. BACKGROUND

## A. Procedural History

Plaintiff filed his DIB application on January 12, 2000, asserting that he has been under a "disability" since March 18, 1999. Tr. 93-95. Plaintiff claims he is disabled due to blindness in his left eye, impairments in his shoulders, and impairments in his cervical and thoracic spine. Tr. 125.

Following initial administrative denials of his application, Plaintiff received a hearing before ALJ David Redmond on December 21, 2001. Tr. 549-72. On February 21, 2002, ALJ Redmond issued a written decision, concluding that Plaintiff could perform a limited range of light work and was "not disabled." Tr. 60-69.

Upon a review, the Appeals Council vacated the decision and remanded the case to ALJ Redmond. *See* tr. 77-80. The basis for remand was the ALJ's failure to adequately consider the treating source's disability finding. *See* tr. 78.

On remand, a second hearing was held before ALJ Redmond on February 18, 2004. Tr. 573-604. On June 25, 2004, ALJ Redmond issued a written decision, finding Plaintiff could perform a reduced range of sedentary work and was "not disabled." Tr. 21-32. The Appeals Council denied Plaintiff's request for review. Tr. 7-10.

Plaintiff then filed an action in this Court seeking judicial review of ALJ Redmond's second decision. Tr. 636. This Court granted the Commissioner's motion to remand for further proceedings under Sentence Four of 42 U.S.C. § 405(g). Tr. 637-65. Specifically, this Court remanded on one issue -- the ALJ failed to ask the vocational expert ("VE") whether the jobs identified in response to the ALJ's hypothetical are consistent with the *Dictionary of Occupational Titles* ("DOT"). Tr. 662.

The Appeals Council vacated ALJ Redmond's decision and remanded the matter for further administrative proceedings consistent with this Court's Order. Tr. 668-70. The Appeals Council directed the ALJ, on remand, to take additional evidence as appropriate, including obtaining updated medical records from treating sources, consultative examinations and evidence from a medical expert ("ME"). Tr. 669.

On remand, Plaintiff's case was before ALJ James Knapp ("ALJ Knapp"). ALJ Knapp received additional medical evidence, and held a hearing on July 25, 2008. *See* tr. 621, 832-66. ALJ Knapp issued a written decision, finding Plaintiff "not disabled" and denying his DIB claim. Tr. 616-31.

Specifically, ALJ Knapp's "Findings," which represent the rationale of his decision, were as follows:

1. The claimant met the disability insured status requirements of the Act on March 18, 1999, the date claimant stated claimant became unable to work, and continued to meet them through June 30, 2003, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since March 18, 1999.

3. The medical evidence establishes that the claimant had the following severe impairments as of and prior to his date last insured: 1) non-dominant left shoulder arthritis and tendonitis; 2) lumbar and cervical spine degenerative disc disease; and 3) loss of left eye vision.

4. The claimant did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.

5. The claimant's subjective allegations lack credibility to the extent that they purport to describe a condition of disability within the meaning of the Social Security Act and Regulations as of and prior to his date last insured.

6. The claimant, as of and prior to his date last insured, lacked the residual functional capacity to: 1) lift greater than ten pounds frequently or twenty

3

pounds occasionally; 2) do any crawling or climbing of ladders or scaffolds; 3) do any reaching above shoulder level or repetitive lifting from below waist level; 4) do any job requiring good peripheral vision to the left side; or 5) do any work at unprotected heights or around moving machinery (20 CFR 404.1545).

7. The claimant has been unable to perform his past relevant work as a parts salvager and industrial truck operator.

8. The claimant's residual functional capacity ["RFC"] for the full range of light work was reduced by the limitations set forth in Finding No. 6 as of and prior to his date last insured.[2]

9. The claimant was 44 years old as of his date last insured, which classified him as a "younger individual" (20 CFR 404.1563).

10. The claimant has a l0th-grade or "limited" education (20 CFR 404.1564).

11. The claimant did not have any acquired work skills which are transferable to other jobs within claimant's residual functional capacity (20 CFR 404.1568).

12. Based on an exertional capacity for light work, and the claimant's age, education, and work experience, section 404.1569 and Rule 202.18, Table No. 2, Appendix 2, Subpart P, Regulations No. 4, would direct a conclusion of "not disabled."

13. Although the claimant's additional non-exertion limitations did not allow claimant to perform the full range of light work, using the above-cited Rule as a framework for decision making, there are a significant number of jobs in the national economy which claimant could have performed as of his date last insured, both at the light and sedentary exertion levels. Examples of such jobs are: nut sorter, table worker, surveillance systems monitor, microfilm

---

[2]The Social Security Administration classifies jobs as sedentary, light, medium, heavy, and very heavy depending on the physical exertion requirements. 20 C.F.R. § 404.1567. Sedentary work "involves lifting no more than 10 pounds at a time " and "a certain amount of walking and standing is often necessary." *Id.*§ 404.1567(a). Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing,  or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*§ 404.1567(b). Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying objects weighing up to 25 pounds." *Id.*§ 404.1567(c). Heavy work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." *Id.*§ 404.1567(d). Very heavy work "involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying objects weighing up to 50 pounds." *Id.*§ 404.1567(e).

> processor, labeler, and box sealing inspector. Such jobs existed in the number of at least 8,000 in the region surrounding Dayton, Ohio, a region that contains jobs that exist proportionately at the national level.
>
> 14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through June 30, 2003, the last date the claimant had disability insured status, or at any time through the date of this decision (20 CFR 404.1520(g)).

Tr. 629-30 (brackets added).

Thereafter, the Appeals Council denied Plaintiff's request for review, making ALJ Knapp's non-disability finding the final administrative decision of the Commissioner. Tr. 605-08. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Plaintiff then filed this appeal on February 10, 2011. Doc. 2.

**B. Plaintiff's Vocational Profile and Testimony**

Plaintiff was 44 years old on his date last insured and thus considered a "younger individual." *See* 20 C.F.R. § 404.1563. Plaintiff completed the tenth grade and later obtained his GED. Tr. 837. He has past relevant work as an automobile parts salvager, a machine operator and a forklift operator. Tr. 126, 138.

At the administrative hearing, ALJ Knapp asked Plaintiff to describe his impairments as they existed in 2003. *See* tr. 838. Plaintiff testified that he experienced back pain that radiates into his right leg. *Id.* He reported that he has not had back surgery, but he takes pain medication, and has tried "trigger points, blocks, epidurals, radio frequency. . . [a]nd physical therapy three or four different times." Tr. 838-40. He testified that these treatments help "[a]bout 35 percent." Tr. 840. In addition, Plaintiff testified that he had a torn rotator cuff injury in his left shoulder in 1995, but he did not have corrective surgery until February 2004. Tr. 840. Plaintiff also reported that he has no eyesight in his left eye and double vision in his right eye. Tr. 842.

Plaintiff estimated that, in 2003, his right arm pain was a seven-to-eight out of ten, whereas at the time of the hearing, it was a five-to-six out of ten. Tr. 846. He testified his left arm pain in 2003 was a five-to-six out of ten, whereas at the time of the hearing, it was a four out of ten. *Id.* He rated his back pain in 2003, and also at the time of hearing, as an eight out of ten. *Id.*

As to daily living activities in 2003, Plaintiff testified that he watched television. Tr. 841. He laid in bed all day, and slept for about an hour off and on. Tr. 844. He reported that he did very few household chores, and went shopping with his son every two weeks for about thirty minutes at a time. *See* tr. 841-45. Plaintiff testified that he drove two or three times a week in order to attend medical appointments. Tr. 836.

Plaintiff estimated that, in 2003, he could walk one to one-and-a-half blocks, stand fifteen minutes, and sit fifteen minutes at a time. Tr. 844-45. He estimated that the most weight he could lift was a plate or cup. *See* tr. 845. Plaintiff noted he cannot reach his arms out or overhead. Tr. 847.

Medical expert Malcolm Brahms, M.D. testified before ALJ Knapp. Tr. 849-55. Based on his review of Plaintiff's medical records, Dr. Brahms opined that Plaintiff was capable of performing light work with the following restrictions: (1) no repetitive over-the-head or below-waist lifting; (2) no lifting over twenty pounds; and (3) no ladders or scaffolds. Tr. 850, 854.

In addition, vocational expert Vanessa Harris, Ph. D. also testified at the 2008 hearing before ALJ Knapp. Tr. 855-63. She testified that Plaintiff does not have any transferable skills to light or sedentary level jobs. Tr. 856. The ALJ proposed the following hypothetical work capabilities to the VE: (1) lifting consistent with light work; (2) no reaching above shoulder level; (3) no repetitive below-waist lifting; (4) no crawling; (5) no climbing of ladders or scaffolds; (6) no requirement of

6

good peripheral vision; and (7) no unprotected heights or moving machinery. Tr. 857. Based on this hypothetical, and Plaintiff's age, education, and work experience, the VE testified there were 4,500 light jobs and 3,500 sedentary jobs in the Dayton region which Plaintiff could perform. *Id.* She also reported that an additional limitation -- of alternating between sitting and standing at thirty-minute intervals -- would not change the number of available jobs. *Id.*

Further, the ALJ asked the VE whether her testimony is consistent with the DOT. Tr. 857-58. The VE acknowledged that the DOT does not specifically consider the peripheral vision limitation. *Id.* However, she testified that, based on her job site observations, the jobs she identified can be performed with such a restriction. Tr. 858. She reported no other inconsistencies with the DOT. *Id.*

## II. APPLICABLE LAW

### A. Substantial Evidence Standard

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen* v. *Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff

disabled. *Id.* Thus, the Commissioner has a "'zone of choice' within which he can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 763, 773 (6th Cir. 2001).

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Thus, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for DIB, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. §§ 423 (a), (d). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.* § 423(d). A DIB claimant bears the ultimate burden of establishing that he or she is disabled under the Social Security Act's definition. *Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997).

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520. Although a dispositive finding at any step ends the ALJ's review, *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the Listings), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's residual functional capacity ("RFC"), can he or she perform his or her past relevant work?

5. Considering the claimant's age, education, past work experience, and RFC, can he or she perform other work available in the national economy?

20 C.F.R. § 404.1520(a)(4).

### III. ANALYSIS

As a preliminary matter, the Court notes that ALJ Knapp complied with the Court's February 26, 2008 decision and elicited VE testimony that the jobs the VE identified are consistent with the DOT. *See* tr. 657-63; 857-58. *See also Swett v. Comm'r of Soc. Sec.*, No. 3:07-cv-17, 2008 WL 552481, at *1-2 (S.D. Ohio Feb. 26, 2008) (Rice, J.). However, ALJ Knapp also went beyond this Court's Order and made new findings. *Compare* tr. 616-31 *with* tr. 21-32. Now the Court must review ALJ Knapp's decision for error. In doing so, the Court recognizes that, since Plaintiff's filing in January 2000, his DIB claim has been reviewed multiple times, including three times by an ALJ, two times by the Appeals Council, and once by this Court, and none have found Plaintiff "disabled." Moreover, the Court recognizes that Plaintiff is applying only for DIB benefits and his date last insured was June 30, 2003. Therefore, any new medical evidence since this Court last reviewed Plaintiff's claim is only relevant to the extent it relates to his condition prior to the expiration of his DIB eligibility. *See King v. Sec'y of Health & Human Servs.*, 896 F.2d 204, 205-06 (6th Cir. 1990).

Further, the Court notes that Plaintiff's pertinent medical records have been adequately summarized in the parties' briefs, *see* doc. 11, at PAGEID 40-47; doc. 15, at PAGEID 65-69, and

the Court will not repeat them here. Where applicable, the Court will identify the medical evidence relevant to its decision.

In his Statement of Errors, Plaintiff argues that the ALJ erred in three respects. First, Plaintiff contends the ALJ did not give proper weight to his treating physicians' opinions. *See* doc. 11 at PAGEID 48-51. Second, he asserts that the ALJ's RFC finding is unsupported by substantial evidence. *See id.* at PAGEID 51-54. Third, Plaintiff argues that the ALJ's credibility analysis is also unsupported by substantial evidence. *See id.* at PAGEID 54-56.

### A. Substantial Evidence Supports ALJ Knapp's Decision to Not Defer to Plaintiff's Treating Source Opinions, and His RFC Finding

Plaintiff's first two arguments will addressed together. Plaintiff first asserts that ALJ Knapp improperly weighed his treating physicians' opinions. He contends that ALJ Knapp erroneously discredited his treating pain specialist Dr. Donnini's opinion that Plaintiff is unable to perform even sedentary work on a sustained basis. Further, he asserts that ALJ Knapp erred in giving insufficient weight to the opinion of his other treaters, Dr. Goodall and Dr. Urse.

The treating physician rule "requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). However, a treating physician's conclusory statement -- that the claimant is disabled -- is not determinative of the ultimate issue. *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 213 (6th Cir. 1986). Rather, to be entitled to controlling or substantial weight, the treating physician must supply sufficient medical data to substantiate that opinion. *See Bogle v. Sullivan,* 998 F.2d 342, 347-48 (6th Cir. 1993). Accordingly, an ALJ properly rejects a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *See Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997). In rejecting a treating source opinion, the ALJ is required to give "good reasons" for the weight given to that opinion. *Blakley,* 581 F.3d at 406 (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ's failure to do so is reversible error unless the Court finds the error harmless. *Id.* at 409.

### 1. Dr. Donnini

Most of Plaintiff's medical records are from the Pain Evaluation and Management Center, of Ohio, Inc., where Plaintiff has been treated by Ricahrd Donnini, D.O. and Harold Stratton, M.D. since August 1999. *See* tr. 249-303, 391-414, 442-69, 480-90, 717-831. In June 2001, Dr. Donnini reported that, due to Plaintiff's decreased right shoulder; cervical and thoracic range of motion and pain to palpation; and weakness and numbness of his upper right extremity and right hand, Plaintiff was limited to lifting or carrying five pounds occasionally and zero pounds frequently, and to standing or walking three-to-four hours in one day and one hour without interruption. Tr. 386-90. In addition, due to pain and spasms in Plaintiff's right leg, Dr. Donnini opined Plaintiff was limited to sitting just four-to-five hours in one day, and one-to-two hours without interruption. *Id.*

ALJ Knapp rejected Dr. Donnini's opinion on the grounds that it "lack[ed] accurate objective medical support" and "is contradicted by the opinion of two [m]edical [e]xperts who had the opportunity to review the entire longitudinal record, and who posses far superior medical qualifications." Tr. 627.

As this Court previously held in its February 2008 decision, Dr. Donnini's opinion is unsupported by objective medical evidence. *See* tr. 651-52; *Swett*, 2008 WL 552481, at *11-12. While the Court acknowledges that, on remand, Plaintiff submitted new medical records from Dr. Donnini, such evidence does not persuade the Court otherwise because the records were made after

11

Plaintiff's date last insured of June 30, 2003. *See* tr. 621, 717-829. *See also King*, 896 F.2d at 205-06. In addition, all of the new treatment notes are signed by Dr. Stratton instead of Dr. Donnini. *See* tr. 717-829. Therefore, because the ALJ had good reasons to disregard Dr. Donnini's disability finding -- it was not supported by objective medical evidence -- his decision is supported by substantial evidence. *See Bogle,* 998 F.2d at 347-48.

### 2. Dr. Goodall and Dr. Urse

Plaintiff next argues that ALJ Knapp erred by failing to provide any reasons for rejecting the opinion -- of his treating neurosurgeon, Thomas Goodall, D.O., and his treating orthopedic surgeon, John Urse, D.O. -- that Plaintiff is unable to perform light work.[3]

There are two medical records from Dr. Goodall – both are letters to Plaintiff's treating chiropractor, in which he diagnosed Plaintiff with cervical and thoracic strain, and recommended radio frequency treatment. *See* tr. 376, 427. On January 3, 2002, Dr. Goodall reported that, due to mild degeneration of Plaintiff's cervical spine at C5-6, Plaintiff was limited to: lifting just five pounds occasionally and less than five pounds frequently; standing or walking two hours in one day and half an hour without interruption; and sitting six-to-eight hours in one day and half an hour without interruption. Tr. 428-32. Dr. Goodall concluded that Plaintiff could not perform full-time

---

[3]It is unclear whether Dr. Goodall would even be considered a "treating physician" under Social Security regulations. A "treating source" is defined as one "who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Generally, an ongoing treatment relationship exists "when the medical evidence establishes that you see, or have seen, the source with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required." *Id.* In Plaintiff's medical records, there is no evidence that Dr. Goodall treated Plaintiff beyond his two appointments in November 2000 and January 2002. *See* tr. 376, 427. Indeed, Dr. Goodall was not evaluated as a treating physician in the previous ALJ decisions either. *See* tr. 21-32, 60-69.

light work; however, he put a question mark as to whether Plaintiff could perform full-time sedentary work.[4] *Id.*

Dr. Urse treated Plaintiff for his shoulder impairments. *See* tr. 437-41, 517-20, 706-16. According to the medical records, Dr. Urse saw Plaintiff only three times before opining that he was disabled on December 4, 2003. *See id.* Dr. Urse reported that, due to arthritis in his glenohumeral and acromioclavicular joint in his left shoulder, Plaintiff is limited to: lifting or carrying fifteen pounds occasionally and 10 pounds frequently; using his right arm occasionally; and using his left arm "less than occasionally." Tr. 474-79. In addition, Dr. Urse opined that it would aggravate Plaintiff's pain if he had to push or pull on a consistent basis. *Id.* Dr. Urse did not find any limitations in Plaintiff's ability to stand, walk or sit. *Id.* Dr. Urse concluded that Plaintiff had the RFC to perform sedentary work, but not light work.[5] *Id.*

Plaintiff correctly argues that ALJ Knapp erred by not evaluating these opinions in his written decision. *See* tr. 626-27; *see also Bowen*, 478 F.3d at 747. However, the Court finds this error to be harmless. The Sixth Circuit identified three instances where an ALJ's failure to give good reasons when rejecting a treating source may constitute harmless error: (1) "a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it"; (2) "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion"; or (3) "the Commissioner has met the goal of § 404.1527(d)(2)." *Wilson* v. *Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).

To begin, the Court finds Dr. Goodall's opinion so patently deficient that the ALJ could not

---

[4]This notation suggests that, even in Dr. Goodall's view, Plaintiff might well be able to perform some work, and thus not be "disabled."

[5]This opinion shows that Dr. Urse found Plaintiff to be not "disabled."

13

possibly credit it. *See id.*; *see also* tr. 376, 427-32. Dr. Goodall merely checked boxes on the form with a cursory explanation on the first page -- "mild degeneration C5-6 on MRI" -- and made no other references to objective medical evidence or clinical findings. *See* tr. 427-32. Further, the only records from Dr. Goodall are two letters to Plaintiff's chiropractor. *See id.* Thus, ALJ Knapp's error, in disregarding Dr. Goodall's opinion without any analysis, was harmless. *Cf. Taylor v. Astrue*, No. 3:08-cv-443, 2009 U.S. Dist. LEXIS 111084, at *20-21 (S.D. Ohio Oct. 28, 2009).

In addition, ALJ Knapp's error was harmless because, even had the ALJ included the additional limitations proposed by Dr. Goodall and Dr. Urse, the VE testified that there would still be at least 3,500 sedentary jobs available to Plaintiff -- a significant number of jobs for Social Security purposes. *See Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1987). Notably, Dr. Urse opined that Plaintiff is capable of performing sedentary work and Dr. Goodall merely "questioned" whether Plaintiff could do sedentary work. Tr. 432, 479. Further, to account for Dr. Goodwall's half hour sitting limitation, the VE testified that a sit/stand option would not change the number of light or sedentary jobs available to Plaintiff. Tr. 857. The VE also testified that all of the sedentary jobs would still be available with the five pound lifting limitation proposed by Dr. Goodall. Tr. 858-59. Moreover, on cross-examination, the VE testified that Dr. Urse's limitation -- of using the right arm occasionally and the left arm "less than occasionally" -- would not change the number of light or sedentary jobs available to Plaintiff. Tr. 860-61. Thus, ALJ Knapp's findings are consistent with the opinions of Dr. Goodall and Dr. Urse. Even had ALJ Knapp adopted their RFC limitations, the Commissioner would have still met his burden of showing that a significant number of jobs are available to Plaintiff. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

14

### 3. Plaintiff's RFC

Plaintiff also contends that his RFC finding -- for a limited range of light work -- is unsupported by substantial evidence. The ALJ, not a physician, ultimately determines a claimant's RFC. 42 U.S.C. § 423(d)(5)(B). *See also Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 578 (6th Cir. 2009). It is the ALJ's function resolve conflicts in the medical evidence. *See King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). In making a RFC finding, an ALJ may rely on a non-examining medical advisor's opinion that is based on a review of the complete case record. *See Blakely*, 581 F.3d at 405.

In resolving the conflicting medical opinions, ALJ Knapp explained why he gave greater weight to the ME's opinion:

> The physical findings which define the claimant's RFC for a reduced range of light work essentially are adapted from the functional assessment provided by Dr. Brahms, the Medical Expert. Substantial deference is accorded to the opinion of Dr. Brahms, which is most consistent with degree of impairment severity shown by the medical findings, in particular the diagnostic evidence on MRI studies. The opinion of Dr. Brahms is entitled to great weight as well due to his specialized expertise in orthopedic surgery, because he had the opportunity to listen to the claimant testify under cross-examination at the last hearing.

Tr. 624. ALJ Knapp was permitted to rely on the ME's testimony because the ME testified that he reviewed all of Plaintiff's medical records. *See* tr. 849. *See also Blakely*, 581 F.3d at 405. ALJ Knapp also gave good reasons for discrediting the opinions of Dr. Donnini and Dr. Long, and, as discussed above, his failure to discuss the other treating sources was harmless error. Accordingly, the Court finds the RFC finding is supported by substantial evidence. *Cf. Gribbins v. Comm'r of Soc. Sec.*, 37 F. App'x 777, 780 (6th Cir. 2002).

### B. Substantial Evidence Supports ALJ Knapp's Credibility Assessment

In addition, Plaintiff maintains that ALJ Knapp's credibility assessment is unsupported by substantial evidence. *See* doc. 11 at PAGEID 54-56.

It is the ALJ's function, and not the reviewing court's, to evaluate the credibility of the claimant. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). Accordingly, an ALJ's credibility findings are entitled to considerable deference and should not be lightly discarded. *Casey,* 987 F.2d at 1234. In evaluating a claimant's assertions of disabling pain, the ALJ must engage in a two-step process. *Felisky v. Brown*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ should determine whether the claimant has a medically determinable impairment which could reasonably be expected to produce the pain. *See id.* Second, the ALJ, in light of all the relevant evidence, should evaluate the severity of the alleged pain. *See id.*

As an initial note, ALJ Knapp did not completely disregard Plaintiff's allegations of pain. Rather, he determined that Plaintiff's subjective complaints lack credibility to the extent that he claims he is totally disabled. *See* tr. 627. ALJ Knapp also acknowledged that Plaintiff has the following severe impairments: (1) non-dominant left shoulder arthritis and tendonitis; (2) lumbar and cervical spine degenerative disc disease; and (3) loss of left eye vision.[6] Tr. 622. Further, ALJ Knapp did, indeed, accommodate Plaintiff's symptoms in the RFC finding by limiting Plaintiff to light work, and eliminating jobs that require: crawling or climbing ladders, reaching above shoulder level, repetitive lifting from below the waist, peripheral vision to the left side, or working at unprotected heights or around moving machinery. *See* tr. 623-24.

---

[6]ALJ Knapp also acknowledged Plaintiff's right shoulder injury, but found it not be a severe impairment during the period when Plaintiff had disability insured status. Tr. 623.

ALJ Knapp concluded that the objective medical evidence did not support Plaintiff's allegations of disabling pain. *See* tr. 624, 627. This Court previously reviewed Plaintiff's medical records from 1998 until the end of 2003. *See* tr. 640-52; *Swett*, 2008 WL 552481 at *5-9. Based on those records, the Court agreed that objective medical evidence did not support Plaintiff's allegations of disabling pain. *See* tr. 652-54; *Swett*, 2008 WL 552481 at *12-13. Plaintiff has not presented any new medical records to convince the Court that his pain rendered him disabled as of, or prior to, June 30, 2003. *See* tr. 706-831.

Plaintiff, citing to *Felisky,* argues that the ALJ failed to apply the factors set out in 20 C.F.R. § 404.1529(c).[7] However, while the *Felisky* Court applied each of these factors in the case before it, *Felisky* does not require the ALJ to engage in such an extensive analysis in every decision. *Bowman v. Chater,* No. 96-3990, 1997 U.S. App. LEXIS 34130, at *11 (6th Cir. Nov. 26, 1997). Instead, *Felisky* requires only that the ALJ consider non-medical factors in addition to the objective medical evidence. *See id.*

Here, ALJ Knapp explicitly stated that he considered all the required factors in assessing Plaintiff's subjective complaints. Tr. 627. ALJ Knapp noted Plaintiff's treatment history, as well as his medication side effects. *See id.* Further, ALJ Knapp considered Plaintiff's testimony regarding the intensity of his pain and, when contrasted the objective medical evidence with Plaintiff's daily activities, ALJ Knapp reasonably found Plaintiff's pain complaints lacking credibility. See tr. 624, 627. Thus, ALJ Knapp's credibility analysis is supported by substantial

---

[7]The seven factors listed in 20 C.F.R. § 404.1529(c) and recited in *Felisky* are as follows: (1) daily activities; (2) the location, duration, frequency and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the symptoms; (5) treatment, other than medication, you receive or have received for relief of your pain; (6) any measures used to relieve the symptoms; and (7) other factors concerning the functional limitations and restrictions due to the symptoms.

17

evidence, and he did not commit error in failing to explicitly apply each and every *Felisky* factor. *Cf. Bratcher v. Astrue*, No. 3:08-cv-335, 2009 U.S. Dist. LEXIS 92239, at *30-32 (S.D. Ohio July 10, 2009) (Rice, J.).

Finally, the Court reiterates that the issue is not whether the record could support a finding of disability, but rather, whether the ALJ's decision is supported by substantial evidence. *See Casey*, 987 F.2d at 1233. Given the great deference to an ALJ's credibility assessment, the Court concludes that substantial evidence supports ALJ Knapp's decision to discredit Plaintiff's statements about the severity of his symptoms.

## IV. RECOMMENDATION

For the foregoing reasons, the Court finds Plaintiff's assignments of error to be unavailing. ALJ Knapp's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT:**

1. The Commissioner's final non-disability finding be found supported by substantial evidence, and **AFFIRMED;** and

2. This case be **CLOSED**.

January 24, 2012                                                                  **s/Michael J. Newman**
                                                                                                United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Pursuant to Fed. R. Civ. P. 6(e), this period is extended to **SEVENTEEN** days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B)(C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).